UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
SENIOR HEALTH INSURANCE COMPANY                             :
OF PENNSYLVANIA,                                            :
                                                            :   Master Case No. 1:18-cv-06658 (JSR)
                    Plaintiff,                              :
        -v.-                                                :
                                                            :   Case No.: 1:19-cv-07137 (JSR)
LINCOLN INTERNATIONAL LLC and                               :
LINCOLN PARTNERS ADVISORS LLC,                              :
                                                            :
                    Defendants.                             :
                                                            :
------------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii
PRELIMINARY STATEMENT ............................................................................................... 1
BACKGROUND ...................................................................................................................... 2
ARGUMENT ............................................................................................................................ 5
I.  SHIP'S AIDING AND ABETTING CLAIMS ARE ADEQUATELY PLED ................ 5
    A. The Complaint Adequately Pleads Knowledge ......................................................... 5
    B. The Complaint Adequately Pleads That Lincoln Provided Substantial Assistance to Beechwood's Fraud ................................................................................ 6
    C. The Complaint Adequately Pleads That Lincoln's Substantial Assistance Was a Proximate Cause of SHIP's Damages ...................................................................... 8
II. SHIP ADEQUATELY PLEADS CONSPIRACY ......................................................... 11
    1. SHIP Adequately Pleads a Corrupt Agreement ......................................................... 11
    2. SHIP Adequately Pleads an Overt Act ...................................................................... 12
    3. SHIP Adequately Pleads Lincoln's Intentional Participation in the Furtherance of Beechwood's Fraud .............................................................................................. 12
    4. SHIP Adequately Pleads Injury ................................................................................. 12
III. SHIP ADEQUATELY PLEADS NEGLIGENT MISREPRESENTATION, CONTRIBUTION, INDEMNITY, UNJUST ENRICHMENT, AND CONSTRUCTIVE TRUST CLAIMS ................................................................................ 13
    A. SHIP Adequately Pleads a Special Relationship ..................................................... 13
    B. SHIP Adequately Pleads Claims for Unjust Enrichment/Constructive Trust ............ 14
IV. SHIP SHOULD BE ALLOWED TO REPLEAD ITS CLAIMS, IF NECESARY ...... 15
CONCLUSION ....................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Bayerische Landesbank New York Branch v. Aladdin Capital Management LLC*,
  692 F. 3d 42 (2d Cir. 2012)..................................................................................................13

*Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC,*
  479 F. Supp.2d 349 (S.D.N.Y 2007)……………………………………………………….....5

*In re NYSE Specialists Sec. Litig.*,
  503 F.3d 89 (2d Cir. 2007)………………………………………………………………………11

*In re Platinum-Beechwood Lit.*,
  No. 18-cv-12018 (JSR), 2019 WL 4934967 (Oct. 7, 2019) ........................………....6, 11, 12

*JP Morgan Chase Bank v. Winnick*,
  406 F. Supp. 2d 247 (S.D.N.Y. 2005)……………………………………….……………..6

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011)……………………………………………………………………..14, 15

*Pension Committee of University of Montreal Pension Plan v. Bank of America Securities LLC,*
  568 F.3d 374 (2d Cir. 2009)………………………………………………………………7, 8, 10

*Senior Health Ins. Co. of Penn. v. Lincoln International LLC et al*,
  slip. op., No. 19-cv-07137 (JSR) (Sept. 13,2019) ................................................................15

*Senior Health Ins. Co. of Pennsylvania v. Beechwood Re Ltd.*,
  345 F. Supp. 3d 515 (S.D.N.Y. 2018)……………………………………………………………11

*Sperry v. Crompton*,
  8 N.Y.3d 204 (2007) ............................................................................................................14

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2018)……………………………………………………………………….6

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
  250 F.3d 87 (2d Cir. 2001)..................................................................................................13

*Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*,
  No. 18-cv-1876 (PAE), 2019 WL 2327810 (S.D.N.Y. May 30, 2019)…………..………...5

Plaintiff Senior Health Insurance Company of Pennsylvania ("SHIP") respectfully submits this memorandum of law, together with the Declaration of Amiad Kushner ("Kushner Decl.") and the exhibits annexed thereto, in opposition to defendants Lincoln International LLC and Lincoln Partners Advisors LLC's (collectively, "Lincoln") motion to dismiss SHIP's Amended Complaint (the "Complaint").

## PRELIMINARY STATEMENT

This lawsuit arises from fraudulent valuations issued by a purportedly independent valuation firm, Lincoln. Beechwood induced SHIP to invest with it by touting Lincoln's valuations.[1] Far from providing a "check" on Beechwood, Lincoln enabled the fraud committed by Beechwood and its Platinum affiliates.

On this motion, Lincoln does not dispute that SHIP has adequately pled that Lincoln's valuation reports contained fraudulent statements. Rather, Lincoln attempts to wash its hands of the fraud, claiming (not surprisingly) that it fled the scene of Platinum/Beechwood fraud before SHIP suffered any damages.

Lincoln's arguments lack merit.

As further explained herein, Lincoln substantially assisted Beechwood's fraud by providing fraudulent valuations that Lincoln knew would be used by Beechwood (and its custodian, Wilmington Trust) to calculate the net asset value of Beechwood's assets, including assets that Beechwood contributed to SHIP's IMA accounts. SHIP was damaged because its decisions to remain invested in Beechwood (and authorize purported "performance fees" to Beechwood) were proximately caused by Lincoln's inflated valuations.

For these reasons and as more fully explained below, the Court should deny Lincoln's motion.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint.

1

## BACKGROUND[2]

In February 2014, Lincoln was engaged by Beechwood. Compl. ¶ 45. Lincoln knew that Beechwood was established by an affiliated hedge fund, Platinum, as a source of capital, and that although Lincoln was nominally engaged by Beechwood, its real client was Platinum. *Id*. ¶ 85.

Thus, for example, in March 2014, a Lincoln representative openly noted that Lincoln was engaged "to provide portfolio valuation services for Beechwood Re Ltd., a[n] affiliate of . . . Platinum Partners, a New York based hedge fund with more than $1 billion in assets under management." Compl. ¶ 92. An internal Lincoln memorandum acknowledged that Beechwood was Platinum's "newly formed reinsurance company" and that Platinum created Beechwood Re in order to provide it with "permanent capital[.]" *Id*. ¶¶ 84-85.

In the spring of 2014, Beechwood approached SHIP with a proposal to invest and manage SHIP's funds. Compl. ¶¶ 47-54. Beechwood promised "independent valuation and reporting from Lincoln" on all investments made by Beechwood on SHIP's behalf, including assurance that Beechwood's process and values are "reasonable in relation to fair value measurement principles." *Id.* ¶¶ 49-50.

Unaware that Beechwood was controlled by (and a source of capital for) its Platinum affiliate, SHIP entered into three IMAs with Beechwood in May 2014, June 2014, and January 2015. Compl. ¶¶ 55-77. The IMAs required Beechwood to provide SHIP on a quarterly basis with valuation reports from "an independent third-party valuation company (currently Lincoln International) on all non-public securities, as well as quarter end investment holding report and Net Asset Value." *Id*. ¶ 58. SHIP invested $270 million with Beechwood pursuant to the IMAs. *Id*. ¶ 73.

---

[2] The relevant facts are described in more detail in SHIP's Complaint, which is incorporated here by reference.

Beginning shortly after the first two IMAs were signed, Beechwood conveyed Lincoln's valuations of specific assets to SHIP, notably including Agera Energy, LLC ("Agera"). On July 1, 2014, Beechwood emailed SHIP a copy of a draft Lincoln valuation report on Agera, noting that it was prepared by Beechwood's "independent valuation service," *i.e.*, Lincoln. Compl. ¶ 143. On October 14, 2014, Beechwood emailed SHIP a spreadsheet containing marks for SHIP's assets as of September 30, 2014, indicating that Lincoln was the "price source" for the marks of Agera and Platinum Partners Value Arbitrage. *Id.* ¶ 139.

In December 2014, SHIP's board of directors was presented with documentation concerning SHIP's Beechwood assets investments, which indicated that Lincoln was the "price source" for marks of Agera and Platinum assets. Compl. ¶¶ 140, 142. Likewise, an internal SHIP email from December 2014 refers to Lincoln as "the Beechwood Re pricing and valuation service." *Id.* ¶ 142.

On January 19, 2015, Lincoln sent Beechwood an 80-page valuation report on SHIP's assets, which was entitled "*Quarterly Portfolio Review Prepared for: SHIP.*" Compl. 101-02. This document purported to be a "Positive Assurance Valuation" of $74 million in SHIP's assets as of December 31, 2014. *Id*. ¶¶ 102, 137.

In valuing Beechwood's assets (including those managed for SHIP), Lincoln knew that it lacked critical information that was necessary for any legitimate valuation, such as up to date financial statements. Compl. ¶¶ 98-100. Further, Lincoln knew that Beechwood was an affiliate of Platinum. *See Id*. ¶ 187. Lincoln knew that the values of Beechwood's acquisitions were suspect given that they were acquired in non arm's-length transactions with Platinum. *Id*. ¶¶ 111, 116-17.

Lincoln's valuation team openly mocked Beechwood in their internal emails, going so far as to share a South Park video depicting fraudulent schemes to loot investor funds, and asking whether the video reflected "*Beechwood's investment strategy*." Compl. ¶ 151.

3

Lincoln's "Positive Assurance Valuation" of SHIP's assets as of December 31, 2014 contained multiple false representations.   For example:

- Lincoln represented that fair values determined by Beechwood for SHIP's assets were "*reasonable*" when measured in accordance with Financial Accounting Standards Board standards, when in fact the investments made by Beechwood on SHIP's behalf were non-arm's length transactions between affiliated entities, and thus could not be valued under those standards.   See Compl. ¶¶ 2, 116.

- Lincoln represented that fair values determined by Beechwood for SHIP's assets were "*reasonable*," despite knowing that it lacked the documentation required in order to determine make that determination.   See Comp. ¶¶ 107.

Beechwood also sent Lincoln's fraudulent marks to Wilmington Trust in order to provide cover for the withdrawal of purported "performance fees" to Beechwood under the IMAs.   See Compl. ¶¶ 144-47, 180-201.   Beechwood sent SHIP copies of Wilmington Trust statements containing Lincoln's marks.   Id. ¶¶ 146, 185.   Because Lincoln's marks falsely overstated and misrepresented the value of the assets that Beechwood purchased for SHIP's IMA accounts, Beechwood's purported "performance fees" were not earned.   Lincoln thus abetted Beechwood's looting of SHIP's funds, under the guise of purported "performance fees."

In its internal emails, Lincoln bemoaned the fact that "*Lincoln needs more transparency as to [Beechwood's] investments, underwriting, financial performance, beneficial owners, etc*.").   Compl. ¶ 160.   The Managing Director of Lincoln's Valuations and Opinions Group openly mocked Beechwood, asking: "*do we trust them?*"   Id.   And yet Lincoln kept pumping out valuations at inflated values.

In early February 2015, apparently concerned that its fraudulent valuations would be exposed, Lincoln abruptly decided to terminate its engagement with Beechwood, and ordered its "Platinum/Beechwood team" to "cleanse" all of their files on the Beechwood valuations. Compl.   ¶¶ 7, 162.   Beechwood tried to convince Lincoln to reconsider its decision, even offering to "*become completely independent of Platinum*."   Id. ¶ 159.

Although Lincoln was terminating the relationship, Beechwood insisted that Lincoln

4

issue a final valuation report before terminating its engagement. Compl. ¶ 161. Lincoln acquiesced. On February 19, 2015, Lincoln issued a final Negative Assurance Letter for SHIP's assets, formally terminated Beechwood, and again ordered its staff to destroy their Platinum/Beechwood files. *Id.* ¶ 169.

Lincoln's final Negative Assurance Letter was only two pages long, but mentioned "SHIP" twelve times and valued about $133 million of SHIP's assets. *Id.* ¶ 102.[3] Lincoln never disclosed any of its concerns about Beechwood to SHIP.

## ARGUMENT

### I. SHIP'S AIDING AND ABETTING CLAIMS ARE ADEQUATELY PLED

#### A. The Complaint Adequately Pleads Knowledge

Lincoln contends that the Complaint fails to plead that Lincoln knew of a scheme to defraud SHIP or that its valuations were false. *See* Br. at 10.[4] This contention is meritless.

The knowledge element of an aiding and abetting claim is satisfied when a complaint alleges "facts that give rise to a strong inference of actual knowledge." *Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC,* 479 F. Supp.2d 349, 367 (S.D.N.Y 2007) (internal quotations and citations omitted). Alternatively, "[c]ourts have generally held that allegations of conscious avoidance, where adequately pled, can satisfy the actual knowledge requirement in the context of an aiding and abetting claim." *Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*, No. 18-cv-1876 (PAE), 2019 WL 2327810, at *15 (S.D.N.Y. May 30, 2019) (citations omitted). Conscious avoidance is shown when "it can almost be said that the defendant actually knew because he or she suspected a fact and realized its probability, but

---

[3] A copy of the Negative Assurance Letter is attached to the attorney declaration submitted with Lincoln's motion.

[4] Citations to "Br." are to Lincoln's moving brief on this motion.

refrained from confirming it in order to later to be able to deny knowledge." *Fraternity Fund*, 479 F. Supp. 2d at 367-68 (quotations and citations omitted).

Here, the Complaint extensively details facts establishing Lincoln's knowledge that it lacked documentation necessary to conduct legitimate valuations of Beechwood's investments and that the investments involved non-arm's length transactions with its Platinum affiliate. These allegations raise a strong inference that Lincoln knew that its valuations were inflated and that Beechwood was engaged in fraud. *See* Compl. ¶¶ 2, 107, 112, 113, 116; *See In re Platinum-Beechwood Lit.*, No. 18-cv-12018 (JSR), 2019 WL 4934967, at *46 (Oct. 7, 2019) (knowledge element of aiding and abetting claims against Lincoln was satisfied where CNO "sufficiently allege[d] facts that establish . . . knowledge of overvaluation and the knowledge of non-arm's length nature of the transactions"). At a minimum, Lincoln's decision to terminate Beechwood because it could not trust Beechwood, its internal emails reflecting serious doubts about Beechwood's integrity and investment strategy, and its repeated directives to its staff to destroy their files at the end of the engagement, constitute "conscious avoidance." *See* Compl. ¶¶ 113, 151, 169-72.

The Complaint also alleges facts giving rise to a strong inference that Lincoln knew it was valuing SHIP's assets and that SHIP was relying on Lincoln's valuations. Indeed, the cover page of Lincoln's December 31, 2014 valuation report states that it was prepared for SHIP, and Lincoln's January 31, 2015 report contains numerous references to "SHIP."

### B. The Complaint Adequately Pleads That Lincoln Provided Substantial Assistance to Beechwood's Fraud

"Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *SPV Osus Ltd. v.*

*UBS AG*, 882 F.3d 333, 345 (2018) (citation omitted); *see also JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257 (S.D.N.Y. 2005) (To plead substantial assistance, the complaint must allege that the aider "made a substantial contribution to the perpetration of the fraud.").

Lincoln contends that the Complaint fails to plead substantial assistance because it does "not allege . . . that Lincoln made any misrepresentations to SHIP or that SHIP received and reviewed purported misrepresentations in Lincoln's valuation reports."  *See* Br. at 6-7. Lincoln's argument, reduced to its essentials, is that since SHIP allegedly received Lincoln's valuation information from other actors (*i.e.*, Beechwood or Wilmington Trust) without Lincoln's direct involvement, Lincoln did not substantially assist the fraud.  Lincoln is wrong.

The Complaint pleads in painstaking detail that Lincoln knowingly provided Beechwood with false valuations, knowing that Beechwood would communicate those valuations to its investors (including SHIP) who would rely on them. Compl. ¶¶ 49-50, 93-94. The Complaint further alleges that SHIP actually received Lincoln's valuation marks from Beechwood or Wilmington Trust and relied upon these marks in (i) deciding whether to invest with Beechwood under the IMAs, or to remain invested, and (ii) approving performance fees. *Id*. ¶¶ 188, 193-201. Lincoln thus substantially assisted Beechwood's fraud, regardless of the fact that Lincoln did not directly communicate with SHIP.

In this regard, the Second Circuit's decision in *Pension Committee of University of Montreal Pension Plan v. Bank of America Securities LLC* is instructive.  568 F.3d 374 (2d Cir. 2009).  In that case, hedge fund investors sued Bank of America Securities LLC ("BAS") for aiding and abetting a fraud committed by the hedge fund's investment manager.  The

investors alleged that BAS "knowingly and substantially assisted [the investment manager] in deceiving [the investors] as to the net asset values of the Funds by falsifying the values of the Funds' holdings on Position Reports, which BAS knew would be relied upon by the Funds' auditor and administrators in calculating and verifying the Funds' net asset values ("NAVs")." *Id.* at 377. The investors further alleged that they "reasonably relied upon the [false] representations regarding the Funds' NAVs . . . in deciding to invest in and/or remain invested in the Funds," and that the falsely inflated net asset values were used to justify the payment of fees to [the investment manager] and others, which drained the assets of the Funds." *Id.*

The Second Circuit concluded that these allegations constituted substantial assistance:

> The complaint . . . plausibly and in adequate detail set forth allegations that BAS knowingly placed false values of the Funds' holdings in the Position Reports published in BAS's name with actual knowledge that these Position Reports would be relied upon by the Funds' auditor and administrators in calculating and verifying the Funds' NAVs, and that BAS thus knew that investors and potential investors would receive NAV statements and audits based on the falsified valuations and would base investment decisions on the fraudulent valuations.

*Id.* at 381-82. The same principles apply here. Lincoln substantially assisted Beechwood's fraud by providing fraudulent valuations that Lincoln knew would be used by Beechwood (and its custodian, Wilmington Trust) to calculate the net asset value of Beechwood's assets, including assets that Beechwood contributed to SHIP's IMA accounts. SHIP was damaged because its decisions to invest in Beechwood (and pay performance fees to Beechwood) were proximately caused by Lincoln's inflated valuations.[5]

### C. The Complaint Adequately Pleads That Lincoln's Substantial Assistance Was a Proximate Cause of SHIP's Damages

---

[5] Further, SHIP's claim is for aiding and abetting fraud, not fraud. Thus, SHIP is not required to plead that Lincoln made a false statement which SHIP received and relied upon.

8

Lincoln contends that SHIP has not plausibly alleged any link between Lincoln's valuations and the performance fees that were extracted from SHIP's IMA accounts, because the performance fees (with one exception) were withdrawn from SHIP's account's after Lincoln's engagement terminated on February 19, 2015. Br. at 6-7. This argument also fails.

Lincoln relies on charts pasted from another SHIP pleading, which list dates, amounts, and time periods covered by each performance fee withdrawal. Critically, the charts do not explain how *any* performance fee was actually calculated and what valuation information was included in each calculation. Thus, contrary to Lincoln's contention, the charts do not demonstrate that performance fees withdrawn after February 2015 did not take into account Lincoln's valuations that pre-dated its termination. In any event, the manner in which Lincoln's valuations were (or were not) used in determining performance fees withdrawn from SHIP's accounts raises material questions of fact that cannot be decided at the pleading stage.

More fundamentally, Lincoln's contention is contradicted by the 2014 IMAs, which make clear that a critical component of each performance fee calculation is the net asset value of assets "*contributed to the account*" at the IMAs' inception (or at January 1 of each year).[6]

---

[6] The 2014 IMAs entitle Beechwood to a performance fee only if trading profits exceed the "Investment Return" guaranteed to SHIP, which is defined as 5.85% of the net asset value ("NAV") of assets "*contributed to the account*" as of the date of the IMA or (in later years) "*January 1 of each Year*." *See* Kushner Decl. Ex. A (May 22, 2014 IMA), at Ex. B; Kushner Decl. Ex. B (June 13, 2014 IMA), at Ex. B. Given that Lincoln valued SHIP's assets as of December 31, 2014, Lincoln's calculation of NAV would plausibly have been used to calculate SHIP's Investment Return as of January 1, 2015 and throughout 2015. Thus, even if Lincoln terminated its engagement in February 2015, Lincoln's determination of NAV as of January 1, 2015 would continue to affect the calculation of SHIP's performance fees under the IMAs after the termination date. Indeed, not only did the inflated NAV enable Beechwood to claim that its "performance" exceeded the minimum return, but Beechwood also avoided its obligation to "true up" SHIP's accounts in the event that actual values were below the fictitiously inflated ones.

Performance fees are only payable if performance exceeds the initial net asset value; if the initial net asset value is fictitious or inflated, the entire performance fee calculation is fictitious as well.

Here, the Complaint alleges in detail that assets were contributed to SHIP's IMA accounts at inflated values that were blessed by Lincoln in its valuation reports.[7]  Lincoln's fraudulent valuations thus provided the "baseline" net asset value used to calculate Beechwood's purported performance fees throughout 2015, even after Lincoln ended its engagement on February 19, 2015.  *See* fn. 6, *supra*.  Lincoln's fraudulent valuations thus provided substantial assistance to Beechwood's fraud and proximately caused SHIP's damages. *See Bank of America Securities LLC*, 568 F.3d at 381-82 (where defendant "knew the importance of portfolio valuations and NAV statements, and the ways that [the investment manager] would use them," it was "a fair inference of the complaint that this included . . . knowledge that [the investment manager] would use the falsified NAVs to fraudulently inflate [its] management fees").[8]

---

[7] For example, the complaint alleges that the New Bradley House loan was "a Platinum-connected investment, the antithesis of an arm's length transaction, and thus incapable of receiving a fair market value to begin with," and that Lincoln valued this asset at 100% of fair value in nine valuation reports issued between March and November 2014, and then again in its December 2014 and January 2015 reports when the loan was contributed to SHIP's accounts. Compl. ¶ 112.

[8] Lincoln's substantial and direct assistance in enabling Beechwood to fraudulently inflate the values of assets it purchased and managed — the linchpin of Beechwood's fraud — distinguishes this case from the cases cited by Lincoln where the alleged assistance involved funding or clearing services that were removed from the fraudulent activity itself.  *See* Br. at 6-9 (citing cases); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345-46 (2018) (affirming dismissal of aiding and abetting claims against defendants who allegedly assisted feeder funds that collected money from investors and fed them into the Madoff Ponzi scheme); *Cromer Finance Ltd. v. Berger*, 137 F. Supp.2d 452, 471-472 (S.D.N.Y. 2001) (dismissing aiding and abetting claims against clearing broker, noting that "[a] clearing broker does not provide 'substantial assistance' to or 'participate' in a fraud when it merely clears trades").

At a minimum, as discussed above, the precise manner in which Lincoln's valuations were reflected in Beechwood's calculation of the performance fees is a fact-intensive issue that should not be resolved on this motion. *See In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted) (on a motion to dismiss, courts must accept as true all factual allegations contained in the complaint and must draw 'all inferences in the light most favorable to the non-moving party.'").

## II.   SHIP ADEQUATELY PLEADS CONSPIRACY

"Where there is an underlying tort, the elements of civil conspiracy are: (1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage." *Senior Health Ins. Co. of Pennsylvania v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 531 (S.D.N.Y. 2018) (citation omitted). Contrary to Lincoln's contentions, SHIP adequately pleads all four elements of a claim for conspiracy to commit fraud.[9]

### 1.   SHIP Adequately Pleads a Corrupt Agreement

Lincoln erroneously contends that SHIP has not alleged a corrupt agreement between Lincoln and Beechwood. Br. at 13. To the contrary, SHIP has alleged in painstaking detail that while Lincoln was formally engaged by Beechwood, its real client was Platinum and it had an informal agreement to do Platinum's bidding. *E.g.*, Compl. ¶¶ 90-92. These facts are sufficient to plead a corrupt agreement. *See In re Platinum-Beechwood Litig.*, No. 18-CV-12018 (JSR), at *47 (allegations that Lincoln entered into "engagement letters with Beechwood

---

[9] To the extent Count Three alleges a conspiracy to commit a breach of fiduciary duty, any such allegation is withdrawn.  Accordingly, Lincoln's arguments on this issue (*see* Br. at 11-12) are moot.

11

Re and BAM I" and had an "'informal' arrangement with Platinum" sufficed to plead a corrupt agreement).

### 2. SHIP Adequately Pleads an Overt Act

SHIP has pled that Lincoln issued fraudulent valuation reports and inflated marks which proximately caused damages to SHIP. Accordingly, SHIP has pled an overt act. *See In re Platinum-Beechwood Litig.*, No. 18-CV-12018 (JSR), at *47 (allegations detailing "Lincoln's issuance of allegedly defective valuation reports with fraudulent valuations" sufficiently pled an overt act); *see also* Point I *supra* (discussing Lincoln's substantial assistance to Beechwood's fraud).

### 3. SHIP Adequately Pleads Lincoln's Intentional Participation in the Furtherance of Beechwood's Fraud

The Complaint alleges that Lincoln intentionally participated in furtherance of the conspiracy to defraud SHIP by relying on deficient information to value SHIP's assets, and representing that Beechwood's valuations were "reasonable" despite knowing that the assets were acquired in non arms-length transactions with Platinum. Compl. ¶¶ 78-143. Further, the Complaint alleges that Lincoln was motivated to work with Beechwood because it craved access to a potential gusher of valuation work from Platinum. *See, e.g.*, *Id*. ¶ 86 (Lincoln's internal memo noted that Platinum was "expect[ed] to resource its hedge fund valuations to another provider in the near future" and that Lincoln "could perform the valuations"). These facts are sufficient to plead intentional participation.

### 4. SHIP Adequately Pleads Injury

As discussed above, SHIP adequately pleads that it was damaged because its decisions to invest in Beechwood (and pay performance fees to Beechwood) were proximately caused

12

by Lincoln's inflated valuations. *See* Point I, *supra*; *In re Platinum-Beechwood Litig.*, No. No. 18-cv-12018 (JSR) at *47 (holding that the injury element of a conspiracy claim against Lincoln was satisfied).

### III. SHIP ADEQUATELY PLEADS NEGLIGENT MISREPRESENTATION, CONTRIBUTION, INDEMNITY, UNJUST ENRICHMENT, AND CONSTRUCTIVE TRUST CLAIMS

#### A. SHIP Adequately Pleads a Special Relationship

Lincoln contends that SHIP's negligent representation, contribution and indemnity, and unjust enrichment/constructive trust claims must be dismissed because SHIP has not pled a "special relationship of trust or confidence" between Lincoln and SHIP. Contrary to this assertion, the Complaint adequately pleads a special relationship.

A special relationship is shown by establishing that "(1) the defendant had awareness that its work was to be used for a particular purpose; (2) there was reliance by a third party known to the defendant in furtherance of that purpose; and (3) there existed some conduct by the defendant linking it to that known third party evincing the defendant's understanding of the third party's reliance." *Bayerische Landesbank New York Branch v. Aladdin Capital Management LLC*, 692 F. 3d 42, 59 (2d Cir. 2012). Determining "whether a special relationship exists between two parties is an issue of fact" that is not appropriate for resolution at the pleading stage. *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (citing *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)).

Here, the Complaint alleges that Lincoln knew it would be valuing SHIP's assets and that SHIP was reviewing and relying on those valuations. The Complaint further alleges that Lincoln provided valuations to Beechwood that valued SHIP's assets, and that Beechwood forwarded Lincoln's marks to SHIP. *See* Background, *supra*.

13

Further, the Complaint alleges that Lincoln had unique knowledge that its valuation reports were based upon deficient information and that its understanding of Beechwood was inadequate. For example, in an internal email regarding Beechwood, a Lincoln representative stated that "*the threshold question*" is "*do we trust them*?", and admitted that Lincoln "*needs more transparency as to the investments, underwriting, financial performance, beneficial owners, etc.*" and "*a better understanding what Beechwood is*[.]" Compl. ¶ 160 (emphasis added). Heedless of the fact that SHIP was relying on Lincoln's marks, Lincoln chose to cover up its explosive concerns regarding Beechwood, keeping them carefully hidden in internal discussions, and ultimately directing its staff to destroy their Beechwood files.

Based on these allegations, SHIP has adequately pled that a special relationship existed between Lincoln and SHIP.

### B. SHIP Adequately Pleads Claims for Unjust Enrichment/Constructive Trust

Lincoln argues that SHIP's claims for unjust enrichment and constructive trust fail because "Lincoln did not perform services for SHIP" and that there was no contractual relationship between Lincoln and SHIP  Br. at 15. Lincoln's argument misconstrues the pleading requirements for an unjust enrichment claim.

In New York, the elements of an unjust enrichment claim are "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (citations omitted). Contrary to Lincoln's assertions, there is no requirement that a defendant perform "services" for the plaintiff. Further, and contrary to Lincoln's contention, "a plaintiff need not be in privity with the defendant to state

14

a claim for unjust enrichment[.]" *Sperry v. Crompton*, 8 N.Y.3d 204 (2007).

SHIP has pled that Lincoln reaped fees for its inflated valuations at the expense of SHIP, which suffered hundreds of millions of dollars in investment losses. While Lincoln terminated its engagement with Beechwood and ordered staffers to "cleanse" its files – thereby seeking to wash its hands of the fraud – SHIP was left holding the bag. Under the circumstances, "it is against equity and good conscience to permit" Lincoln to retain its earnings from the fraud. *Mandarin Trading Ltd*, 16 N.Y.3d at 182. The Complaint adequately pleads unjust enrichment.

## IV. SHIP SHOULD BE ALLOWED TO REPLEAD ITS CLAIMS, IF NECESARY

If the Court dismisses the Complaint, SHIP should be afforded an opportunity to replead.

There is no basis to Lincoln's contention that SHIP's "undue delay" in filing its Complaint in this action means that SHIP should never be permitted to replead. In its decision on SHIP's motion for reconsideration, the Court permitted SHIP to proceed with its Complaint, while sanctioning SHIP for its delay and ordering measures to ameliorate any prejudice to Lincoln. *See Senior Health Ins. Co. of Penn. v. Lincoln International LLC et al*, slip. op., No. 19-cv-07137 (JSR) (Sept. 13, 2019) (stating that SHIP should "not be deprived of its day in court on its complaint against Lincoln when lesser steps will suffice to mitigate the harms SHIP has caused"). SHIP should not now be treated worse than any other litigant in the consolidated actions.

## CONCLUSION

SHIP respectfully requests that the Court issue an order denying Lincoln's motion.

Respectfully Submitted,

SEIDEN LAW GROUP LLP

By: /s/Amiad Kushner
    Amiad Kushner
    Dov B. Gold
    469 Seventh Avenue, Fifth Fl.
    New York, NY 10018
    (212) 523-0686

    *Counsel for Senior Health Insurance Company of Pennsylvania*